UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY MELVIN HOWARD,

                                Petitioner,              Case No. 2:19-cv-10316
                                                                       Hon. Victoria A. Roberts

v.

PAT WARREN,

                              Respondent.
_____/

**OPINION AND ORDER: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PETITIONER'S PENDING MOTIONS**

Billy Melvin Howard ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. A jury convicted him in the Wayne Circuit Court of three counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; felonious assault, MICH. COMP. LAWS § 750.82; discharge of a firearm from a vehicle, MICH. COMP. LAWS § 750.234a; discharge of a firearm at a dwelling, MICH. COMP. LAWS § 750.234b; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The Court sentenced Petitioner to 16 to 30 years for the assault with intent to murder convictions and lesser terms for his other offenses.

Petitioner raises five claims in his habeas petition: (1) his Sixth Amendment right to conflict-free counsel was violated when his trial attorney also represented Petitioner's brother, who was a co-defendant in the case, (2) he was constructively denied his Sixth Amendment right to counsel when his trial attorney failed to interview two prosecution witnesses prior to trial, (3) he was denied the effective assistance of counsel when his trial attorney failed to interview and

present Marsha Dae Jackson as a defense witness, (4) the prosecutor presented the false testimony of Marquisha Jackson, and Petitioner was not allowed to confront her with evidence of a prior threat, and (5) the trial judge invaded the province of the jury by confirming on the record that witnesses were pointing at Petitioner when they identified the shooter during trial.

All of these claims are without merit. For that reason, the Court denies his petition and a certificate of appealability. Finally, the Court denies Petitioner's pending motions for summary judgment and bond as moot.

## I. Background

The charges against Petitioner concerned a drive-by shooting occurring sometime shortly after 4:00 p.m. on August 23, 2013, on a residential street in Detroit. Two of the individuals present at the targeted house identified Petitioner as the shooter and Petitioner's brother, Germaine Howard, as the driver. Prior to trial, Germaine pled guilty to assault with intent to commit murder and commission of a felony with a firearm.

At trial, Marquisha Jackson testified that on the date of the incident sometime around 4:00 p.m., she was in front of her Detroit house with her partner, Jermaine King. Tamika Williams arrived in her car with her infant daughter.

Jackson saw Germaine Howard drive by her house alone in his car. Jackson was sure of her identification of Germaine because she had known him for over a decade, had dated him, and it was the middle of sunny day.

A few minutes later, Germaine drove by again with a passenger in the front seat. Jackson recognized the passenger as someone she had seen before with Germaine at a neighborhood party store. The car stopped in front of the house. The passenger pulled out a gun and started shooting. Jackson heard Tamika Williams yell that her baby was shot.

Jackson subsequently identified Germaine and Petitioner's photographs at the police station. During trial, Jackson expressed her certainty that Petitioner was the shooter.

Jermaine King testified that he and Germaine fought at a party store a few days before the incident. King identified Germaine as the driver of the vehicle that passed in front of his house. King testified that a few minutes after Germaine drove by the house alone, he returned with Petitioner in the front passenger seat. The car stopped in front of the house, Petitioner yelled "what's up," and then he pointed a handgun out of the window and started shooting. A bullet grazed Jermaine's head.

Henry Cannon testified he was outside of his house across the street from King's house. He saw the car pull up, an arm extend out of the passenger window, and then he heard shots. Cannon could not identify the driver or shooter.

Tamika Williams testified she was at King and Jackson's house to visit. She and her infant daughter sat in her parked car in front of the house when the shooting occurred. One of the bullets grazed her daughter. Williams could not identify the driver or shooter.

 Petitioner called two alibi witnesses in his defense. Dana Wood, Petitioner's girlfriend, testified that she went over to his house to borrow his bridge card on the date of the incident. She arrived at Petitioner's house at about 3:40 p.m. and left before 4:00 p.m.

Earl King testified that he was Petitioner's cousin. On the day of the incident he picked up his children from summer school and arrived home around 4:30 p.m. Petitioner was already at King's house when he arrived back home. Petitioner stayed over his house that night.

Based on this evidence, the jury found Petitioner guilty on all charges.

Following sentencing, Petitioner filed a claim of appeal. His first appellate attorney filed a brief raising claims that are not presented in Petitioner's federal habeas petition. Petitioner also filed has own supplemental pro se brief raising three additional claims.

Petitioner then retained substitute appellate counsel—the same attorney who represents him in this action.  He filed another brief on appeal that raised the following claims:

I. Whether, where the prosecution's case relied solely on witness testimony, counsel's complete failure to conduct pretrial preparatory investigative interviews of any of the prosecution's witnesses constructively deprived defendant of his Sixth Amendment right to counsel because counsel was unable to subject the prosecution's case to any meaningful adversarial testing.

II. Whether, where identity of the perpetrator was an essential element and a question of fact for the jury, the trial court judge invaded the province of the jury and pierced the veil of judicial impartiality by confirming each complaining eyewitnesses' in-court identification by ordering that the record reflect that the witnesses indeed pointed to and identified defendant as the perpetrator.

III. Whether defendant was deprived of his Sixth Amendment right to the effective assistance of counsel and prejudiced, where this case rested significantly upon the credibility of accuser Marquisha Jackson, where trial counsel was aware Marquisha Jackson's own sister made a police report claiming that Marquisha Jackson threatened her to change her story in a previous criminal prosecution, and counsel failed to take advantage of the trial judge's willingness to allow the previously threatened witness/sister of the accuser to testify.

IV. Whether defendant Howard was deprived of his Sixth Amendment right to the effective assistance of counsel when his trial counsel had a conflict of interest. He simultaneously represented defendant Howard's brother-co-defendant. The requires reversal; where counsel allowed the joint representation to affect his decision making for defendant.

V. Whether defendant was deprived his Sixth Amendment *Crawford* right to effectively and meaningfully confront a key prosecution witness pertaining to her past instances of threatening other witnesses to change their story and lie in court, when the trial court refused to allow trial counsel to recall and cross examine accuser Marquisha Jackson with evidence she had threatened other witnesses to be untruthful, contrary to her assertion that she never threatened anyone to lie to the police.

VI. Whether defendant was deprived of his Sixth Amendment right to the effective assistance of counsel when counsel failed to object and ensure an appropriate

4

cautionary instruction was issued when the officer-in-charge indicated that he personally believed that he had the right person, indicating his belief in defendant's guilt.

Petitioner's substitute appellate counsel also filed a motion to remand the case to the trial court for an evidentiary hearing. The Michigan Court of Appeals granted the motion, and the case was sent to the trial court for an evidentiary hearing.

At the remand hearing, Germaine Howard testified that Petitioner's trial counsel, Pat Nyenhuis, was someone he knew before this case. Nyenhuis represented Germaine in a 2013 Oakland County traffic offense, and then in a 2013 Macomb County domestic-violence case. Germaine testified that Nyenhuis still represented him on those two matters when he began representing the two brothers in the this case. Germaine testified that he did not meet attorney Otis Culpepper, who eventually represented him at his guilty plea hearing, before the date of that hearing on January 15, 2014.

Germaine confirmed that he was the driver of the car involved in the shooting and that his passenger was the shooter. He testified that Petitioner was not present and was not the shooter. Germaine testified that he told Nyenhuis he wanted to testify at Petitioner's trial to exonerate him. Significantly, Germaine testified that he told Nyenhuis that he was unwilling to reveal the identity of the actual shooter at trial because it might be someone he was friendly with or it might put him in danger. ECF No. 4-12, at 50.

Otis Culpepper testified that Patrick Nyenhuis rented office space from him. Nyenhuis told Culpepper that he had a conflict in one of his cases because he was representing two brothers. The brothers' mother ended up paying Culpepper to represent Germaine. Culpepper testified that Nyenhuis made no decisions for Germaine after Culpepper began representing him:

> Let me clear something up. Mr. Nyenhuis did not represent Mr. Germaine Howard after I was retained. If he stepped in, it was only on some minor position. No decisions were made by Mr. Nyenhuis relative to my client, ever.

ECF No. 4-14, at 55.

Culpepper never attempted to obtain a plea deal for Germaine that required him to testify against his brother. There was no fee sharing between Nyenhuis and Culpepper. Nor did Culpepper pay Nyenhuis to stand in for him for a few minutes for Germaine at the January 13, 2014, pretrial hearing.

Nyenhuis testified at the hearing that he rented office space from Otis Culpepper beginning in the Summer of 2013. He represented Germaine Howard in an Oakland County misdemeanor traffic offense in September of 2013. Nyenhuis filed an appearance for Petitioner in this case on September 29, 2013. He did not share fees with Culpepper, Culpepper was not his partner, and they did not share file rooms. Nyenhuis admitted that from time to time he stood in during cases for Culpepper, as he did for several other attorneys, when there were scheduling conflicts.

Early in the proceedings Nyenhuis realized the potential for a conflict of interest if he continued to represent both brothers. He he suggested that Culpepper might be a candidate to take over Germaine's case. After the substitution of counsel, Nyenhuis estimated he talked to Germaine a few times in lock-up to let him know that his new attorney would come to speak with him. Despite withdrawing from the instant case, Nyenhuis continued to represent Germaine on the traffic case in Oakland County. Nyenhuis denied ever talking with Culpepper about trial strategy.

Nyenhuis filed a witness list on January 16, 2014, which listed Wood, King, and Germaine as defense witnesses. Nyenhuis explained that he was still contemplating whether to call Germaine as a defense witness on that date. Nyenhuis did not call Germaine as a defense witness because he

thought his story was not credible, and because Germaine was unwilling to reveal the identity of the shooter.

Nyenhuis testified that he approached Marquisha Jackson to interview her after the preliminary examination, but she shook her head when he approached, indicated to him that she refused to speak with him. He did not attempt to talk to her after that day.

Marsha Dae Jackson testified that the day before the shooting she saw King and Germaine arguing at a neighborhood market. They were arguing over Marquisha, whom Germaine previously dated. On the day of the shooting, Marsha testified that she was sitting on her porch on Parker Street and saw Germaine drive up and down the street alone in his car several times. The last time he drove by was immediately before she heard shots. Marsha did not see the shots fire, and she was unsure whether they were fired on her street or King's nearby street. A short time later, King came running into her home yelling about "that m-fer" shooting at his niece. Marsha did not ask for King to clarify who fired the shots.

Marsha testified that King assaulted her in December of 2012 and June of 2013, and her sister threatened her in July of 2013. Marsha testified that the police report she filed in July of 2013 about her sister's threat was true. Marsha testified, however, that Marquisha never told her to lie about the instant shooting.

Following the hearing, the trial court rejected Petitioner's claims and found that Petitioner was not entitled to a new trial.

The case returned to the Michigan Court of Appeals. Petitioner filed a post-hearing brief, raising the following claims:

> I. Whether indisputably representing conflicting interests adversely affected the judgment of an extremely inexperienced attorney who did not know that continuing to appear on behalf of one client while standing in for the attorney from the same law offices he arranged to represent the other client did not relieve the conflict.

II. Whether trial counsel's inexperience and failure to associate with an experienced and competent attorney, and ignorance of the overwhelming clearly established case law that required counsel to personally investigate the prosecution's case by interviewing prosecution witnesses before choosing a defense strategy, constructively deprived defendant of counsel.

III. Whether counsel's failure to investigate, interview and call impeachment/alibi/eyewitness Marsha Dae Jackson to show that her sister was one of the complainants (and wife of the other implicated complainant), threatened physical violence against her to attempt to force her to present false testimony in an unrelated judicial proceeding against that other complainant, prejudiced defendant-appellant.

IV. Whether defendant-appellant Howard's Sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the permissible sentence in violation of *Alleyne v. United States*.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Howard*, 2017 WL 1337492 (Mich. Ct. App. Apr. 11, 2017).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising these five claims:

I. Was defendant-appellant deprived of his Sixth Amendment right to the effective assistance of counsel when his trial counsel had a conflict of interest, simultaneously representing defendant-appellant Howard's brother co-defendant, requiring reversal where counsel allowed the joint representation to adversely affect his decision making for defendant-appellant?

II. Did trial counsel's inexperience and failure to associate with an experienced and competent attorney, and ignorance for the overwhelming clearly established case law that required counsel to personally investigate the prosecution's case by interviewing prosecution witnesses before choosing a defense strategy, constructively deprived defendant-appellant of counsel?

III. Did counsel's failure to investigate, interview, and call impeachment/alibi/eyewitness Marsha Dae Jackson to show that her sister, one of the complainants (and wife of the other implicated complainant) threatened physical violence against her to attempt to force her to present false testimony in an unrelated judicial proceeding against the other complainant prejudice defendant-appellant?

8

IV. Was defendant-appellant deprived of his constitutional right to effectively and meaningfully confront a key prosecution witness on her past instances of threatening other witnesses to change their story and lie in court, when the trial court refused to allow trial counsel to recall and cross-examine accuser Marquisha Jackson with evidence that she had threatened other witnesses to be untruthful, contrary to her blanket assertion that she never threatened anyone to lie to the police?

V. Where identity of the perpetrator was an essential element and a question of fact for the jury, did the trial court judge invade the province of the jury and pierce the veil of judicial impartiality by confirming each complaining eyewitnesses' in-court identification by ordering that the record reflect that the witnesses indeed pointed to and identified defendant-appellant as the perpetrator?

The Michigan Supreme Court denied the application by form order. *People v. Howard*, 905 N.W.2d 967 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. Id. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. Analysis

### A. Conflict of Interest

Petitioner's first claim asserts that he was denied his Sixth Amendment right to conflict-free counsel when his trial attorney, Patrick Nyenhuis, also represented his brother, co-defendant Germaine Howard. Petitioner asserts that because Otis Culpepper was Nyenhuis' law partner, the substitution of Culpepper as counsel for Germaine did not remove the conflict. He argues that the conflict also persisted because Nyenhuis continued to represent Germaine in an unrelated misdemeanor cases in other counties. Finally, Petitioner notes that Nyenhuis continued to stand-in for Culpepper during pretrial proceedings.

The Sixth Circuit set forth the following standard to assess conflict-of-interest based ineffective assistance claims on habeas review:

> A petitioner asserting that he received ineffective assistance of counsel must demonstrate that counsel performed deficiently and that the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a petitioner must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. To demonstrate prejudice, a petitioner must "show[] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel and, in doing so, secures him the assistance of counsel free from conflicts of interest.

> When a petitioner asserts counsel's ineffectiveness arising from a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" [*Strickland v. Washington*, 466 U.S.] at 692, 466 U.S. 668 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate "an actual conflict of interest." *Wood v. Georgia*, 450 U.S. 261, 273 (1981). An "actual conflict," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance."

*Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350. This Court has observed that "[i]n *Mickens v. Taylor*, the Supreme Court found that the presumed standard of *Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation," and therefore "has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies." *Stewart v. Wolfenbarger*, 468 F.3d 338, 350-51 (6th Cir. 2006) (collecting cases).

> The Supreme Court in *Mickens* stated that "as a general matter, a defendant alleging a Sixth Amendment violation must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 535 U.S. at 166. The Supreme Court recognized, however, that there are exceptions to this general standard where the burden is lessened. For example, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Id. at 171 (quoting *Sullivan*, 446 U.S. at 349-50) (emphasis added). However, the Supreme Court stated that "when the trial judge is not aware of the conflict (and thus not obligated to inquire) ... prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Id*. at 172.

*Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 843-44 (6th Cir. 2017).

The Michigan Court of Appeals did not unreasonably apply this standard in denying Petitioner's claim on the merits.

First, the Michigan Court of Appeals reasonably determined that Nyenhuis did not actively represent conflicting interests. "To prove actual conflict, a defendant must 'point to specific instances in the record' and 'make a factual showing of inconsistent interests.'" *United States v. Kilpatrick*, 798 F.3d 365, 375 (6th Cir. 2015) (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987)). Petitioner fails to make such a showing. The most common basis for finding conflicting interests is when two defendants have antagonistic defenses. Petitioner failed to present any evidence at the state court hearing that he and his brother had antagonistic defenses. The record indicates that Nyenhuis represented Germaine in an unrelated case in another county while he represented Petitioner on this case, but Petitioner fails to show how the representation in the other

case led to conflicting interests here. Nyenhuis briefly stood in for Germaine's new attorney at a pretrial hearing where the brothers' cases were formally joined for trial, but Petitioner fails to indicate how the two had conflicting interests at that point in the proceedings. Indeed, Germaine pled guilty a few days after the hearing while represented by Culpepper. Nyenhuis himself did not perceive divergence of interests during the time he represented both brothers.

Petitioner failed in the state courts to reveal that an *actual* conflict existed. Certainly, the *potential* for conflicting interests existed. It might have been a case in which the two defendants wished to point the finger at each other, or the prosecutor might have attempted to cut a deal with one to testify against the other. But the opportunities for an actual conflict never arose once Germaine pled guilty and Nyenhuis determined that he would not call him as a witness because his story was not credible. It was reasonable for the state court to conclude, based on the record made in the trial court, that no actual conflict of interest arose. See *United States v. Giorgio*, 802 F.3d 845, 849 (6th Cir. 2015) ("[A] potential conflict remains just that until it actually impairs the defendant's interests.").

Petitioner asserts that the substitution of Culpepper as counsel for Germaine amounted to a continuation of joint representation because Nyenhuis and Culpepper were law partners. As a factual matter, the evidence presented at the state court hearing indicated that the two attorneys were sole practitioners who merely shared office space. They did not share files or split fees, and they did not discuss trial strategy in this case.

In any event, even if the two were law partners, in *Burger v. Kemp*, 483 U.S. 776 (1987), the Supreme Court held the Sixth Amendment is not violated solely because two co-defendants are represented by two different attorneys who are partners in the same firm, even where the co-defendants have antagonistic defenses. 483 U.S. at 783-88. The Court acknowledged that it is

possible prejudice could arise where partners represent co-defendants, particularly where they collaborate on the case. *Id*. at 783. But the Court emphasized that there must be "actively represented conflicting interests and . . . an actual conflict of interest [that] adversely affected [the defendant's] lawyer's performance." *Id*. (quoting *Strickland*, 466 U.S. at 692) (internal quotation marks omitted). Accordingly, the mere fact that Nyenhuis had some sort of professional association with Culpepper does not demonstrate an active representation of conflicting interests. The state court's rejection of this allegation did not contravene Supreme Court law.

Next, the Michigan Court of Appeals reasonably found no adverse effect as the result of any purported conflict. It is worth noting that in his federal habeas petition Petitioner makes no effort to develop an argument as to how Nyenhuis' purported conflict of interest adversely affected his defense; he simply states in conclusory fashion, "this conflict of interest unquestionably adversely affected the adequacy of Nyenhuis' representation." ECF 1, at 3. No explanation of how this is "unquestionably" so appears in Petitioner's federal pleadings.

In the state courts, however, Petitioner asserted that Nyenhuis' duty of loyalty to Germaine prevented him from calling Germaine as a witness in Petitioner's defense. He asserts that Germaine had an interest not to testify at Petitioner's trial because he would be forced to name the actual shooter, who might seek retribution against him. Petitioner, on the other hand, had the conflicting interest to have Germaine testify that Petitioner was not the shooter. The problem with this argument is that is not the reason Nyenhuis decided not to call Germaine as a witness. Nyenhuis testified that he did not call Germaine as a matter of trial strategy because he did not think the jury would find his story credible. ECF No. 4-16, at 91; ECF No. 4-17, at 45, 80-81. This was particularly true because Germaine was not willing to name the actual shooter at the time of trial. ECF No. 4-12, at 50. The trial court found that this was the reason for the decision to not call

Germaine as a witness, and not any duty Nyenhuis owed to Germaine. ECF No. 4-23, at 8-9. This Court must presume that factual determination is correct on federal habeas review. Petitioner does not overcome the presumption of correctness by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). It should be noted that Germaine purportedly finally revealed the name of the "true" shooter after the state court evidentiary hearing. The late revelation is irrelevant. It was Germaine's refusal to reveal the name at trial that led to Nyenhuis' decision not to call him as a defense witness.

Petitioner also asserted in the state court that the purported conflict caused Nyenhuis to avoid plea negotiations that might have resulted in Petitioner testifying against Germaine or from having Petitioner identify Germaine as the trigger man. As the Michigan Court of Appeals noted, however, there is no evidence indicating that Petitioner wanted to enter a plea bargain. Nor has Petitioner ever asserted that he was willing to testify against Germaine or assert that Germaine was the shooter. These arguments are sheer speculation of an adverse impact that is not supported by the evidence presented.

Petitioner fails to "point to specific instances in the record to suggest an actual conflict or impairment of his interests," in which Nyenhuis "made a choice between possible alternative courses of action" to benefit Germaine at Petitioner's expense. *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996). And because "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, adverse effects exist only where "it is clear that the choice was not part of a legitimate strategy," *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004) (emphasis added).

It was reasonable for the state court to conclude that each decision made by Nyenhuis was the result of legitimate trial strategy and not the result of a purported conflict of interest.

Accordingly, the Michigan Court of Appeals reasonably rejected this claim based on the record made in the state court evidentiary hearing.

## B. Constructive Denial of Counsel

Petitioner's second claim asserts that he was constructively denied his Sixth Amendment right to counsel because prior to trial defense counsel failed to interview the two prosecution witnesses who identified him as the shooter. He argues that this failure amounts to a failure to subject the prosecutor's case to meaningful adversarial testing, and that he is not required to show how his defense was prejudiced.

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized a class of cases in which Sixth Amendment violations are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. One such situation occurs when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. Petitioner asserts that the failure to interview the two identifying eyewitnesses prior to trial amounts to such a failure. The *Cronic* standard, however, largely does not apply to cases of inadequate pretrial preparation. See *Johnson v. Bradshaw*, 205 F. App'x 426, 432-33 (6th Cir. 2007).

Although Nyenhuis made no attempt to interview Jermaine King or Marquisha Jackson after Marquisha rebuffed his attempt to speak with her after the preliminary examination, the record shows that Nyenhuis was otherwise familiar with the witnesses' statements, and examined them at trial in a manner that reflected his familiarity with their statements. The *Cronic* standard applies only to cases where the collapse of the adversarial system is imminently clear. *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002). An interview of prosecution witnesses is only one of several ways that an attorney might prepare for their trial testimony. Nyenhuis did not throw his

hands up and abandon preparation after Marquisha refused to speak with him - he prepared for her testimony in other ways. His failure to interview these witnesses did not rise to the level of a constructive denial of counsel for which prejudice need not be shown. Instead, Petitioner must demonstrate how the failure to interview these witnesses before trial resulted in actual prejudice to his defense. See *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. Mich. 2007).

In light of the record, Petitioner has not shown a reasonable likelihood that the result of his trial would have been different had his counsel interviewed these witnesses. Indeed, Petitioner's two-sentence argument in his petition does not develop any argument to show actual prejudice. ECF No. 1, at 4. He has not shown that interviews would have elicited any additional information that counsel might have used in cross-examination or that it would have in any other manner benefitted his defense. Accordingly, the state court's rejection of this claim on the merits did not unreasonably apply clearly established Supreme Court law.

## C. Failure to Call Marsha Dae Jackson

Petitioner's third claim is that trial counel was ineffective for failing to call Marsha Dae Jackson as a defense witness. He argues that she would have testified to her sister, Marquisha Jackson's, propensity to elicit false testimony statements. Petitioner claims that Marquisha previously threatened Marsha in an attempt to compel Marsha to falsely testify at a different proceeding involving a dispute with Jermaine King. He also asserts that Marsha would have testified that she saw Germaine Howard immediately before the shooting and that no one else was in the car.

The Michigan Court of Appeals rejected the claim on the merits:

> Defendant argues that Nyenhuis should have called Marsha as a witness at trial to impeach Marquisha's credibility. But Nyenhuis explained to the trial court that Marsha was unavailable at the time of trial. There is nothing in the record to establish that she could have been located and produced. Contrary to defendant's

claim, the trial court did not offer to grant a continuance until Marsha could be produced. Further, defendant has not shown that Marsha's testimony in this case about Marquisha's threat in an unrelated case more than a month before the crimes in this case were committed would have been reasonably likely to produce a different outcome in this case. Marquisha's threat against Marsha was to protect Marquisha's husband, Jermaine King concerning the prosecution of him for a crime unrelated to the matter at hand. Her motivation to protect her husband in another case would not provide a reason for Marquisha to falsely accuse defendant in this case or to urge other witnesses to do so. There is no evidence that Marquisha had a motive to falsely accuse defendant. Defendant suggests that Marsha's testimony would also have impeached Jermaine King's credibility, but there is no evidence that he assisted or encouraged Marquisha's alleged threat against Marsha.

Nor could Marsha have provided eyewitness or alibi testimony in this case that was reasonably likely to produce a different outcome. At the *Ginther* hearing, Marsha testified that she had never seen defendant before the *Ginther* hearing and that she did not know where defendant was on the date of the shooting. Marsha was not present on Durand Street at the time of the shooting; instead, she was at her house on Parker Street. She saw Germaine driving in a car by himself on Parker Street three times on the date of the shooting. Marsha testified at the *Ginther* hearing that Germaine was alone in his vehicle when she saw him on Parker Street and that she saw his car go south on Parker Street, she heard a shot, then his car backed up and she heard a few more shots. She did not see any shots and was unsure whether the shots came from the car or the house. Nyenhuis had already spoken to Germaine several times and Germaine ultimately pleaded guilty concerning the incident. Nyenhuis was well aware, based on Germaine's own statements, that a second person was in the car during the shooting. Thus, not only was Marsha's testimony not reasonably likely to have produced a different outcome at trial, counsel made a strategic, and perhaps ethical, decision not to call as a witness someone who's testimony directly conflicted with that of the co-defendant's admitted statement to being present with another person at the scene and shots being fired from the car. Accordingly, we conclude that the failure to call Marsha at trial did not deprive defendant of a substantial defense and thus did not constitute ineffective assistance of counsel.

*Howard*, 2017 WL 1337492, at *10-11.

This decision involved a reasonable application of the *Strickland* standard. As indicated by the state court, defense counsel indicated during trial that Marsha was not available to testify. Her unavailability was the reason counsel attempted to use the police report recounting Marsha's allegations against her sister, albeit unsuccessfully, instead of calling her to testify. The record is devoid of information concerning Marsha's unavailability at the time to trial. Petitioner had a full

opportunity at the state court evidentiary hearing to question Marsha about her availability to testify at trial, but he failed to do so. ECF No. 4-21, at 4-55, 86-89.

The presumption under *Strickland* is that counsel's actions were the result of trial strategy, and Petitioner failed to offer evidence during the state court hearing to overcome the presumption that Nyenhuis did not call Marsha because she was not available to testify. It was reasonable for the state court to find that counsel was not ineffective for failing to call an unavailable witness.

Moreover, the state court reasonably found that counsel's decision not to present Marsha's testimony was reasonable trial strategy. The purported value of her testimony was that she would undermine Marquisha's general credibility with information that Marquisha threatened her when Marsha made accusations against Jermaine King. The testimony did not involve Marquisha's accusation of Petitioner and Germaine Howard. While Marquisha had a motive to protect her husband, Petitioner points to no similar motive she had against Petitioner or Germaine.

Petitioner also claims that Marsha would have been valuable to the defense with respect to her observations on the date of the shooting. Marsha saw Germaine driving on her street a few times alone in his car immediately before the shooting. It was reasonable for the Michigan Court of Appeals to find that this testimony was not beneficial to the defense. Marsha's account was consistent with the testimony of the victims who also saw Germaine driving alone in his car before the shooting. Neither victim testified that Germaine was alone in the car when the shooting occurred. And Marsha testified at the state court hearing that she did not see the shooting, she only heard shots fired. In other words, she did not see whether Germaine was still alone in his car when the shots were fired.

The Michigan Court of Appeals did not unreasonable apply the *Stickland* standard to this claim.

## D. Presentation of False Testimony

Petitioner's fourth claim appears to be a variation on one of the claims he presented to the state courts. He asserts that his trial was rendered unfair in violation of due process because the prosecutor presented Marquisha Jackson's testimony as true without revealing that she threatened Marsha Dae Jackson to lie in another judicial proceeding involving Jermaine King. He also asserts that the trial court thereafter prevented him from confronting Marquisha with the police report generated after  the reported threat on Marsha Dae.

With respect to the alleged due process violation, this claim was not presented to the state courts. Though it is unexhausted, the Court may nevertheless address and reject it on the merits. See 28 U.S.C. § 2254(b)(2). Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)). To prove that the prosecutor's presentation or failure to correct false testimony violated the Due Process Clause, a habeas petitioner must show that (1) the statement was actually and "indisputably" false; (2) the prosecution knew it was false; and (3) the statement was material. *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019). Petitioner fails to establish that any of Marquisha's trial testimony was false. Even if it is true that she threatened her sister in an effort to have he lie in an unrelated proceeding, that fact does not render any of her testimony in Petitioner's trial false. Nor, for the same reasons, does Petitioner demonstrate that the prosecutor knew that any of Marquisha's testimony would be false. The two cases were unrelated. Marquisha is said to have threatened her sister who made accusations against Marquisha's partner, Jermaine. Petitioner points to no similar motive Marquisha possessed against Petitioner. Petitioner's unexhausted due process claim is without merit.

Next, Petitioner asserted in state court that his right to confrontation was violated when his counsel was prevented from cross-examining Marquisha with the information contained in the Marsha's police report. This claim fails because it cannot be supported by clearly established Supreme Court law. Supreme Court law distinguishes between a "general attack" on the credibility of a witness by attacking trustworthiness generally, and a more particular attack on credibility directed toward revealing possible biases, prejudices, or ulterior motives in the case at hand. *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1973).

Cross-examination as to bias, motive or prejudice is constitutionally protected by clearly established Supreme Court law, but cross-examination as to general credibility generally is not. *Boggs*, 226 F.3d at 737, citing *Olden v. Kentucky*, 488 U.S. 227, 232 (1988). Cross-examination as to the contents of Marsha's police report went, at most, to Marquisha's general credibility. *Fuller v. Woods*, 528 F. App'x. 566, 570 (6th Cir. 2013). Therefore, the trial court's ruling that Petitioner was prohibited from using extrinsic evidence in the form of the police report to attack Marquisha's general credibility did not implicate Petitioner's constitutional right to confrontation as recognized by clearly established Supreme Court law.

Petitioner fails to demonstrate entitlement to relief on his fourth claim.

### E. Trial Court's Comments Regarding In-Court Identification

Petitioner's fifth claim asserts that the trial court invaded the province of the jury and denied him his right to a fair and impartial judge when the trial judge confirmed for the record that prosecution witnesses pointed at Petitioner when they were asked by the prosecutor to identify the gunman.

Petitioner cites no Supreme Court case forbidding this commonplace practice. "Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that

20

supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted). Identifying clearly established federal law is thus the "threshold question under AEDPA." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). In answering this threshold question, we must consult "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotation marks omitted). Petitioner cites no Supreme Court holding prohibiting a trial court from clarifying the trial record as to whom a witness identifies in the courtroom. Accordingly, he fail to demonstrate entitlement to habeas relief on this claim.

Since none of Petitioner's claims merit relief, the Court denies the petition.

## IV. Certificate of Appealability

To appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner fails to demonstrate entitlement to habeas relief with respect his habeas claims; they are devoid of merit.

Because of this decision, Petitioner's pending motion for summary judgment, motion to grant summary judgment as unopposed, and motion to be released on bond, are denied as moot.

## V. Conclusion

The Court: 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2)

**DENIES** a certificate of appealability, and 3) **DENIES** Petitioner's pending motions as moot.

**ORDERED.**

s/ Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

Dated: 6/5/2020