UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY MELVIN HOWARD,

                 Petitioner,              Case No. 2:19-cv-10316
                                                           Hon. Victoria A. Roberts

v.

PAT WARREN,

                 Respondent.
_____/

**ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION [ECF No. 15]**

On June 5, 2020, the Court denied Petitioner Billy Melvin Howard's application for a writ of habeas corpus filed under 28 U.S.C. § 2254. Before the Court is Petitioner's motion for reconsideration. Petitioner asserts that with respect to his third claim, the Court considered only the allegation that his trial counsel was ineffective for failing to call Marsha Dae Jackson as a defense witness at trial, and it did not consider the additional argument that defense counsel was also ineffective for failing to interview her prior to trial.

Pursuant to Local Rule 7.1(h), a party seeking reconsideration must demonstrate (i) a "palpable defect" by which the court and the parties have been "misled," and (ii) that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). A "palpable defect" is an error that is "obvious, clear, unmistakable, manifest or plain." *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001).

Petitioner fails to demonstrate a palpable defect by which the court was misled. Irrespective of whether counsel has an obligation to ultimately call a defense witness to testify at trial, counsel has an initial "duty to make reasonable investigations or to make a reasonable decision that makes

particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Id. at 691. An attorney's decision not to investigate must be directly assessed for "reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment." *Id*. Therefore, "[i]n assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

Here, Petitioner presented little evidence at the state court hearing regarding the perceived value of Marsha Jackson to the defense case and the need to interview her prior to trial. The evidence presented showed only that trial counsel had information that one of the victims, Marquisha Jackson, threatened Marsha in an effort to protect her husband, Jermaine King, from prosecution. ECF No. 4-16, at 84; ECF No. 4-17, at 55-56. The information trial counsel had amounted to a police phone log entry noting that Marsha Jackson called to inform police of Marquisha's threat. Id. The incident between Jermaine King and Marsha Jackson, meanwhile, had nothing whatsoever to do with the present shooting.

Despite the fact that the threat related to a collateral matter, trial counsel nevertheless investigated whether charges were brought against King. ECF No. 4-16, at 86. Trial counsel admitted that he decided not to investigate this line of potential impeachment testimony further. Trial counsel explained at the state court hearing that he understood Petitioner to be claiming that the victims' family members were attempting to frame him for the shooting, and Marsha Jackson was a member of one of the victim's family. Id., at 73. Trial counsel suggested that he therefore

viewed calling Marsha Jackson as a risky proposition. Id. Though a pretrial interview may have assuaged some of those concerns, it remains the case that Marsha Jackson was viewed prior to trial as a marginally potential useful witness to the defense, and she was irrelevant to Petitioner's defense of alibi or mistaken identification.

Therefore, given the information trial counsel had prior to trial, his decision not to interview Marsha Jackson was not objectively unreasonable. Marsha Jackson was not particularly important to Petitioner's defense, the dispute between Marsha and Marquisha had nothing to do with Petitioner or his brother, and Marsha's relevance was limited to impeaching one of the victims on a collateral matter. Counsel is not obligated to investigate every avenue of future potential impeachment, and this one might reasonably have been viewed as minor. Petitioner therefore failed to overcome the presumption that the failure to interview Marsha Jackson prior to trial constituted deficient performance in light of the information known to trial counsel at the time.

Even if it is assumed counsel performed deficiently by failing to interview Jackson, he failed to demonstrate prejudice. Unlike the performance prong, Petitioner does not assert that the *Strickland* prejudice prong differs in a failure to interview claim from a failure to call claim. Both claims require Petitioner to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. As indicated by the state court, Marsha's claim that Marquisha threatened her to protect Jermaine King was completely unrelated to the shooting, and it in no way suggested any motive on Marquisha's part to falsely accuse Petitioner. It was reasonable for the Michigan Court of Appeals to find that even if Marsha Jackson had testified to Marquisha's threat, there was not a reasonable probability of a different trial result.

Furthermore, it was reasonable for the state court to find that Marsha Jackson would not have otherwise provided testimony beneficial to the defense. The first indication in the record that Marsha also witnessed some of the events on the day of the shooting appears in her testimony at the state court post conviction hearing. Marsha lived close to her sister on a nearby residential street. She testified that she saw Germaine Howard driving alone in a car in the area immediately before the shooting. But no one ever claimed that Germaine Howard was the shooter. Rather, it was both the prosecution and defense theories that there was a passenger in Germaine's car who was the shooter. Germaine Howard admitted in his guilty plea that he was the driver, and he refused to identify who his passenger was. The central question at trial was whether Petitioner was the shooter passenger in Germaine's car or whether it was someone else. Because Marsha Jackson did not see *any* passenger in the car, her testimony would not have benefitted the only defense theory ever presented at trial, on appeal, or in this action – that someone other than Germaine or Petitioner was the shooter.

A habeas petitioner challenging his attorney's failure to present a witness at trial must show that the witness would have been available and willing to testify in his defense, because otherwise the jury would never hear the testimony. *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (rejecting ineffective assistance claim where "witnesses were unavailable or would not cooperate with counsel at the time of pre-trial preparation"). Trial counsel indicated at the time of trial that Marsha Jackson was not available to testify – explaining his failed attempt to use the police call log to impeach Marquisha. See ECF No. 4-8, at 6. Petitioner, though he was afforded a full and fair opportunity at the state court evidentiary hearing to do so, failed to offer any evidence that Marsha Jackson was available and willing to testify in Petitioner's defense at the time of trial. Petitioner could have, but did not, elicit testimony from Marsha at the hearing that had she been contacted

4

and interviewed by defense counsel prior to trial that she would have been willing to testify to the same version of events she testified to at the post conviction hearing. Petitioner therefore fails to demonstrate that his counsel's decision not to interview Marsha Jackson ultimately prejudiced his defense.

Finally, Petitioner asserts in his supplemental brief that the state court unreasonably determined the facts following the evidentiary hearing on Petitioner's conflict of interest claim, and that this Court failed to determine whether the state court adjudication of the claim resulted from an unreasonable determination of the facts under 28 U.S.C § 2254(d)(2). In support of this argument, Petitioner claims that the Michigan Court of Appeals should have credited statements in attorney Nyenhuis's affidavit regarding his perceived conflict of interest and credited attorney Culpepper's characterization of the situation. He also asserts that because the trial court stated in its findings that Nyenhuis thought he had a "conflict," that the state appellate court was bound to find as a factual matter that Nyenhuis had an actual conflict of interest that adversely impacted his representation of Petitioner. ECF No. 4-23, PageID.1312.

Section 2254(d)(2) functions to allow "habeas petitioners to avoid the bar to habeas relief imposed with respect to federal claims adjudicated on the merits in state court by showing that the state court's decision was based on an unreasonable determination of the facts...." *McMullan v. Booker*, 761 F.3d 662, 668-69 (6th Cir. 2014) (quoting *Wilson v. Corcoran*, 562 U.S. 1 (2010) (internal quotation marks omitted)). The burden to overcome this bar to relief is a demanding one:

> "To prove that a state court's factual assessment was 'unreasonable,' a petitioner must show that 'a reasonable factfinder must' disagree with the state court's assessment." *Woods v. Smith*, 660 F. App'x 414, 424 (6th Cir. 2016) (quoting *Rice v. Collins*, 546 U.S. 333, 341 (2006)). Meeting this standard requires [a petitioner] to do more than show an alternative way to view the facts. *Franklin v. Bradshaw*, 695 F.3d 439, 447-48 (6th Cir. 2012) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (quoting *Wood v. Allen*, 558 U.S. 290,

5

301 (2010))). Rather, he must show "that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

*Pollini v. Robey*, 981 F.3d 486, 497 (6th Cir. 2020).

The fact that Nyenhuis's affidavit contained allegations that went beyond his testimony certainly did not render the Michigan Court of Appeals' recitation of the facts unreasonable. The statement in the affidavit that Nyenhuis had a conflict of interest does not represent "clear and convincing evidence" that the state appellate court misapprehended the facts surrounding Nyenhuis's representation of Petitioner. Petitioner had a full and fair opportunity to exam Nyenhuis at the state court hearing on any of the statements in his affidavit, and he failed to elicit testimony that went as far as the affidavit. Similarly, attorney Culpepper's use of the word "conflict" to describe why Nyenhuis solicited him to represent one of the Howard brothers, and the trial court's use of that term in its on the record findings, did not require the state appellate court to find that Nyenhuis's representation of Petitioner was adversely affected by an attorney representing conflicting interests. Regardless of the labels Nyenhuis and Culpepper used, it was the state court's job—in light of the evidence presented—to determine whether there was an actual conflict of interest that adversely affected counsel's performance under *Cuyler v Sullivan*, 446 US 335, 350 (1980). The Michigan Court of Appeals' recitation of the facts developed at the evidentiary hearing fairly and reasonably described the facts presented. See ECF No. 4-24, PageID.1332-33. Petitioner has failed to show that the state court's factual determinations were unreasonable in light of the evidence presented.

Petitioner's claims were correctly rejected on the merits. Accordingly, Petitioner's motion for reconsideration is **DENIED**.

**SO ORDERED.**

                                                  s/ Victoria A. Roberts
                                                  Hon. Victoria A. Roberts
                                                  United States District Judge

Dated: 2/10/2021